UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CHRISTOPHER KELLY,

        Plaintiff,                              **COMPLAINT**

    -against-

CHRISTINA M. LOVERDE and DAVID J. KUHN,      Plaintiff Demands a
                                                                   Trial by Jury

        Defendants.
----------------------------------------------------------------X

    Plaintiff, by his attorneys Sivin, Miller & Roche LLP, complaining of Defendants, alleges as follows, upon information and belief:

## THE PARTIES AND JURISDICTION

    1. That at all times herein mentioned, Plaintiff was and is a citizen of the State of New York.

    2. That at all times herein mentioned, Plaintiff was incarcerated at Groveland Correctional Facility (Groveland), in Sonyea, NY, and was under the care, custody, and control of the New York Department of Corrections and Community Supervision (DOCCS), which was and is an agency of the State of New York.

    3. That as of the time of the filing of this complaint, Plaintiff is not a prisoner as defined by 42 U.S.C. § 1997e(h).

    4. That at all times herein mentioned, Defendant Christina M. LoVerde (LoVerde) was employed by DOCCS at Groveland as the Deputy Superintendent of Security.

    5. That at all times herein mentioned, LoVerde was acting within the course and scope of her employment at DOCCS.

    6. That at all times herein mentioned, LoVerde was acting under color of state law.

7. That at all times herein mentioned, Defendant David J. Kuhn (Kuhn) was employed by DOCCS at Groveland as the Deputy Superintendent of Administration.

8. That at all times herein mentioned, Kuhn was acting within the course and scope of his employment at DOCCS.

9. That at all times herein mentioned, Kuhn was acting under color of state law.

10. That this Court has jurisdiction over this matter, as it arises out of 42 U.S.C. § 1983 and alleges violations of rights guaranteed to Plaintiff under the United States Constitution.

11. That venue is proper, as the events giving rise to this lawsuit occurred in the Western District of New York.

## FACTS

12. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

13. On October 21, 2022, there was a fire in the prison dorm where Plaintiff resided.

14. Subsequent to the fire, Plaintiff and the other individuals housed in the dorm were stripped of their clothes and then taken by correction officials to a cold, disused, decommissioned dormitory.

15. While standing around, cold and in their underwear, the incarcerated individuals (I/Is) became understandably upset, and expressed their annoyance at and disapproval of the manner in which they were being treated.

16. Later that day, LoVerde issued an Inmate Misbehavior Report to Plaintiff in which she falsely accused and charged Plaintiff with violations of prison rules, including "Rioting," "Violent Conduct," "Demonstration," and "Creating a Disturbance."

17. In the Misbehavior Report, LoVerde intentionally made false statements about

Plaintiff, including that Plaintiff was "yelling obscenities toward security staff," was "chanting 'Attica, Attica' while raising his fists," and was "attempting to incite the other I/Is into violence," and that Plaintiff's actions directly "contribut[ed] to acts of violence by other I/Is."

18. As a result of this false Misbehavior Report, a Tier Hearing was held to adjudicate the charges against Plaintiff.

19. The Tier Hearing was conducted and presided over by Kuhn between October 26, 2022 and November 2, 2022.

20. At the hearing, LoVerde gave testimony in which she repeated the false accusations that she had made against Plaintiff in the Misbehavior Report, knowing that those accusations were false.

21. When she gave false testimony at the hearing, LoVerde knew that Plaintiff had a conditional release date of on or about April 27, 2023, and that, were Plaintiff found guilty of the infractions with which she charged him, there likely would be a significant delay in Plaintiff's release from prison, as well as the imposition of various penalties.

22. During the hearing, several I/Is testified that Plaintiff had not engaged in the conduct of which he was accused by LoVerde, and the I/Is all contradicted the testimony given by LoVerde.

23. During the hearing, Kuhn was aware that there was a videotape recording of the October 21, 2022 incident.

24. The videotape was the best evidence of what occurred during the incident, and would have resolved in Plaintiff's favor the disputed issues of fact regarding what took place during the incident.

25. During the hearing, Plaintiff requested that the videotape be produced and that it be

3

reviewed by Kuhn.

26. Despite the clear relevance, if not dispositive nature, of the videotape, Kuhn denied Plaintiff's request that the videotape be produced and reviewed.

27. Kuhn offered no explanation, much less justification, for his refusal to have the videotape produced and reviewed.

28. During the hearing, Plaintiff requested that various other witnesses to the incident testify on his behalf.

29. Kuhn denied Plaintiff's request to allow these other witnesses to the incident to testify on his behalf.

30. Kuhn offered no reasonable justification for his refusal to allow the other witnesses to testify.

31. At the conclusion of the hearing, Kuhn made a determination that LoVerde's statements and testimony were credible, but did not indicate that he even took into consideration the testimony of the multiple witnesses whose testimony contradicted LoVerde's testimony.

32. The aforementioned actions by LoVerde and Kuhn were undertaken in violation of Plaintiff's right to procedural due process, and in violation of New York State rules and regulations governing the conduct of Tier Hearings, including but not limited to 7 NYCRR § 254.6(a)(3), which provides, in pertinent part, that at such hearings, "[t]he inmate shall be allowed to submit relevant documentary evidence or written statements on his or her behalf."

33. The aforesaid actions by LoVerde and Kuhn denied Plaintiff procedural protections that would have allowed Plaintiff to expose the falsity of the charges that were filed against him.

34. On November 2, 2022, at the conclusion of the hearing, Kuhn found Plaintiff guilty of all charges contained in the Misbehavior Report, and imposed a penalty of 180 days in a

Special Housing Unit (SHU), as well as 180 days loss of recreation, packages, commissary, and phone privileges.

35. When he adjudicated Plaintiff guilty and imposed these penalties upon Plaintiff, Kuhn knew that Plaintiff was struggling with mental health issues, and that these penalties, particularly confinement to the SHU, likely would exacerbate Plaintiff's mental health issues.

36. When he adjudicated Plaintiff guilty and imposed these penalties upon Plaintiff, Kuhn knew that Plaintiff had a conditional release date of on or about April 27, 2023, and that the findings of guilty and resulting penalties likely would cause a significant delay in Plaintiff's release from prison.

37. The actions of Defendants herein were intentional, sadistic, and malicious in nature.

38. As a result of Defendants' actions, Plaintiff was confined to the SHU for a period of 180 days and was denied privileges for 180 days, all of which resulted in Plaintiff enduring extreme suffering and hardship far beyond what is typically experienced by other individuals incarcerated at the correctional facility.

39. As a result of Defendants' actions, Plaintiff's release from prison was delayed for a period of over eight months, until his release from prison on January 8, 2024.

40. On March 18, 2025, a Decision and Order was issued from the Supreme Court of the State of New York, County of Sullivan, by the Hon. Stephan G. Schick, annulling in its entirety the determinations made by Kuhn at the Tier Hearing.

41. In its decision, the court found, *inter alia*, that Plaintiff was denied due process at the Tier Hearing when Kuhn refused to have the videotape recording of the incident produced or considered at the hearing.

42. The court also noted that, "[a]lthough questions of credibility are normally left to the

trier of fact, there are no findings here explaining why the inmates were not found credible," and that "there was a very simple way to resolve the issue: play the body camera footage."

43. Based on its findings, the Supreme Court annulled Kuhn's determinations, and ordered "that a new disciplinary hearing be held within 45 days of the date of this order."

44. To date, no new disciplinary hearing has been held, or even scheduled, in connection with the incident of October 21, 2022, and the determinations at the hearing therefore remain annulled.

45. As a further result of Defendants' actions, Plaintiff endured and continues to endure pain and suffering and loss of enjoyment of life, and has been otherwise damaged.

**FIRST CAUSE OF ACTION**
(Violation of Eighth Amendment: 42 U.S.C. § 1983)

46. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

47. The aforesaid actions of Defendants constituted cruel and unusual punishment of Plaintiff in violation of Plaintiff's rights under the Eighth Amendment to the U.S Constitution, and entitle Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

**SECOND CAUSE OF ACTION**
(Violation of Fourteenth Amendment: 42 U.S.C. § 1983)

48. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

49. The aforesaid actions of LoVerde in knowingly fabricating false charges against Plaintiff, and knowingly testifying falsely against Plaintiff at the Tier Hearing, and the aforesaid actions of Kuhn in intentionally and maliciously depriving Plaintiff of a fair and impartial disciplinary hearing, and the actions of both Defendants in subjecting plaintiff to confinement

6

which imposed an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life, constituted a violation of the substantive and procedural due process rights guaranteed to Plaintiff under the Fourteenth Amendment to the U.S. Constitution, and entitle Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

WHEREFORE, Plaintiff demands judgment against Defendants in the form of compensatory damages and punitive damages, in an amount to be determined by the trier of fact, together with attorneys' fees pursuant to 42 U.S.C. § 1988, and together with the costs and disbursements of this action.

Dated: New York, New York
      October 6, 2025

      Yours, etc.
      SIVIN, MILLER & ROCHE LLP

      *s/ David Roche*
      David Roche
      Attorneys for Plaintiff
      20 Vesey Street, Suite 1400
      New York, NY 10007
      Telephone: (212) 349-0300
      Fax: (212) 406-9462
      Email: droche@sivinandmiller.com